Jane Imholte
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: jane_imholte@fd.org

*Counsel for Defendant Spencer Andrew Offman*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>SPENCER ANDREW OFFMAN,<br><br>  Defendant. | Case No. 1:24-cr-00066-TSC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Pursuant to a plea agreement, Mr. Offman pled guilty to one misdemeanor count of Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. §1752(a)(1). For the reasons articulated below, the Court should impose a sentence of probation as sufficient, but not greater than necessary to meet the §3553(a) criteria.

**I.   GUIDELINE CALCUATION**

There is no dispute with probation's calculation of an advisory guideline sentencing range of 0-6 months.[1] Mr. Offman is a Criminal History Category I; and the Total Offense Level here is 4. Since this is within Zone A of the sentencing chart, a "sentence of imprisonment is not required." U.S.S.G §5C1.1(b).

## II.   STATUTORY SENTENCING FACTORS

As a general matter, strict adherence to the sentencing guidelines was struck down in *United States v. Booker*, 543 U.S. 220 (2005). Rather, the guidelines are just one of many factors the court must consider when fashioning a sentence that is "sufficient but not greater than necessary" to achieve the sentencing goals enumerated in 18 U.S.C. § 3553(a). *Id*.

While all sentencing proceedings are to begin by determining the applicable guideline range, the District Court may not presume the guideline range is reasonable. *Rita v. United States*, 551 U.S. 338, 352 (2007)(citing *Booker*, 543 U.S. at 259-60). Nor should the guidelines range be given more or less weight than any of the sentencing factors among those set out in 18 U.S.C. § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Gall v. United States*, 552 U.S. 38, 46 (2007).

In this case, a term of probation is a fair application of §3553(a) factors, including the advisory sentencing guidelines.

---

[1] Presentence Report, p. 13. Dckt. 26 (Hereinafter, "PSR".)

A. The Nature and Circumstances of the Offense

The circumstances surrounding the riot at the Capitol on January 6, 2021, are well known to the parties and the Court, and are highlighted in the Presentence Investigation Report at Docket 26, paragraphs 20-35. Mr. Offman does challenge some of the narrative offered here and in the government's sentencing memorandum.

Mr. Offman does not contest that Image 1 in the Government's Sentencing Memorandum shows him with a barricade lifted above his head. *See* "Government's Sentencing Memorandum, p. 3 [Dckt. 28]. He did not, however, actively work to move the barricades to the front of the crowd to use them as weapons as the government asserts. Instead, Mr. Offman only moved the barrier forward to prevent it from falling on him. During the riot, individuals at the back of the crowd picked up barriers and passed them forward. Once this process began, other members of the crowd had to keep them moving, similar to concertgoers and bodysurfers, to prevent the barricades from falling and injuring someone. If Mr. Offman had not grabbed the barrier in the image, it would have fallen on his head as the person behind him pushed it forward. And once he was grabbing the barricade, he could not hold it above his head for long because of its weight. Putting it down was also not an option. Images 1 and 2 both show that it was so crowded on the steps that there was nowhere for the barricade to go except forward. *Id.,* p.3-4. Mr. Offman does not deny that he passed the barrier over his head, but rather asserts the act was not willful; and he did not intend to move the barriers to be used as weapons.

Image 2 in the Government's Sentencing Memo is even less supportive of the government's point. *Id.* It does not depict Mr. Offman carrying barricades at all. In fact, they do not even appear to be off the ground in the picture. Mr. Offman is standing next to the barriers and resting his hands on them, not picking them up. The Government's interpretation is not only not clear from the image, but also illogical. The barriers are made of metal, and it would have been difficult for Mr. Offman to move them any meaningful distance carrying them with his hands in the position depicted. To do so would have required he keep all the weight of the barriers on one side of his body and hold both at awkward, off-center angles. There is also nowhere for Mr. Offman to go with the bike racks. The stairs are packed with people and there is no space for him to walk, let alone carry two large barriers held horizontally. These images show Mr. Offman walked around the Capitol building but not that he actively tried to move barricades or help others use them as weapons. That is because Mr. Offman did not do so.

    Mr. Offman does acknowledge he got carried away on January 6. Unlike many other similarly charged defendants, he has never boasted or bragged about his actions that day. Though he admittedly was less than forthcoming to investigating officers out of fear, he takes full responsibility for his conduct and makes no excuses for his actions. As he has expressed to undersigned counsel, he never intended to fight this case because he is not innocent. Mr. Offman resolved this case with a guilty plea very quickly in part to demonstrate his total acceptance of responsibility.

B. <u>Mr. Offman's History and Characteristics</u>

Mr. Offman is 34 years old. His only criminal activity is for misdemeanor drunk driving offenses, perhaps the most common offense anywhere. He has been working for the Kroger Company for fifteen years, using his position with this national grocery chain to see the country. He works six days a week, only taking off Thursdays. He lives a frugal, modest life. He currently rents a room in the home of an elderly woman whom he assists with household tasks. There is no evidence or reason to believe that Offman is not an ordinary, decent, and productive member of his community aside from the offense conduct from one day in 2021. Based upon his age and low-level offense conduct, there is no reason to suspect that he will reoffend. This sentencing factor mitigates in favor of a probationary sentence.

C. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; to Protect the Public from Further Crimes of the Defendant; and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner</u>

Mr. Offman unlawfully entered the Capitol through a broken window at 2:35 PM, and remained inside for about six minutes before exiting and leaving the area. He took no part in the significantly more serious crimes that occurred that day. Any period of incarceration is a serious penalty for a man with no history of assaultive conduct who has

never before served significant jail time, particularly because in this instance, incarceration may cost him a valuable career. A probationary period certainly promotes respect for the law and will deter both Mr. Offman and others who are similarly situated from committing such acts in the future.

Protection of the public does not appear to be a significant factor in the instant matter as Mr. Offman has no history of assaultive or obstructive conduct, and he has performed exceedingly well while on pretrial release. *See e.g. U.S. v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (75% downward variance reasonable in part because of defendant's "behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary" which is shows defendant unlikely to reoffend); *U.S. v. Baker*, 502 F.3d 465 (6th Cir. 2007) (below-guideline sentence of probation with one year house arrest proper in part because the defendant behaved "exceedingly well" while under supervision of pretrial services)

D. <u>The Kinds of Sentences Available</u>

Due to his extremely low offense level, lack of criminal history, and limited involvement in the January 6 riot, Mr. Offman ought to receive a sentence of probation, as recommended by the PSR. Should the Court deem that a term of punitive detention is necessary under §3553(a), a very short term of home detention would be sufficient, but not greater than necessary. Congress has specifically provided for this form of punishment in 18 U.S.C. §3563(b) and (b)(19):

> The Court may provide, as further conditions of a sentence of probation, to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2), that the defendant – [. . .] remain at his place of residence during nonworking hours and, if the court finds it appropriate, that compliance with this condition be monitored by telephonic or electronic signaling devices, except that a condition under this paragraph may be imposed only as an alternative to incarceration[.]

While the defense believes that a term of home detention is greater than necessary under the sentencing factors, probation with or without home detention would be fair under the circumstances. However, the court is urged to consider that Mr. Offman's 15-year career is in jeopardy with any custodial sentence.

E. <u>The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct</u>

A sentence of probation would not result in unwarranted sentencing disparities in light of the following cases.

Rachael Pert was sentenced to two years of probation, 100 hours of community work service, and was ordered to pay $500.00 in restitution for a violation of 18 U.S.C. § 1752(a)(1).[2] In addition to unlawfully entering the Capitol with her co-defendant boyfriend, Ms. Pert broadcast livestream videos of their travels to D.C. and boasted about "stopping the vote." Her boyfriend, Dana Winn, bragged about bringing along a flagpole in order to "fight antifa." Mr. Winn was sentenced to 10 days in jail, 12 months of

---

[2] *U.S. v. Pert*, 1:21-cr-129-TNM.

probation, 100 hours of community service and was also ordered to pay $500.00 in restitution.

Jeffrey Shane Witcher was originally indicted for one felony count and four misdemeanors.[3] In addition to entering the Capitol unlawfully, Mr. Witcher penetrated the Crypt area of the Capitol and took recordings of himself chanting and screaming at police officers. Mr. Witcher pleaded guilty to a single count, a violation of 18 U.S.C. 1752(a), the same offense as Mr. Offman's. The remaining counts were dismissed. Mr. Witcher received a sentence of 12 months of probation, 60 hours of community service, and was also ordered to pay $500.00 in restitution.

Brian McCreary was also indicted on one felony charge and four misdemeanors for his actions on January 6.[4] Mr. McCreary was one of the first individuals to enter the Capitol after it was breached by other rioters. Like Mr. Adams, *infra*, Mr. McCreary reentered the Capitol after being ordered to leave by police. Mr. McCreary also recorded other members of the crowd harassing and chasing police officers. Mr. McCreary pleaded guilty to one count of Entering and Remaining in a Restricted Building. He received a sentence of 36 months of probation, 42 days of intermittent confinement, 60 days of home detention, 60 hours of community service, and was also ordered to pay $500.00 in

---

[3] *U.S. v. Jeffrey Shane Witcher*, 1:21-cr-235-RC.

[4] *U.S. v. Brian McCreary*, 1-21-cr-125-BAH.

restitution.

Like Mr. McCreary and Mr. Witcher, Kevin Cordon was indicted on one felony charge and four misdemeanors.[5] Mr. Gordon was also one of the first people to enter the Capitol after the breach. He wore body armor and a gas mask; he also penetrated the Crypt area. After he exited the building, Mr. Cordon was interviewed by a Finnish news company during which he declared "this was just the beginning." Mr. Cordon ultimately pleaded guilty to one count of Entering and Remaining in a Restricted Building or Grounds. He received a sentence of 12 months' probation, 100 hours of community service, a $4000.00 fine, and was ordered to pay $500.00 in restitution.

Felipe Marquez was another early entrant of the breached Capitol.[6] He got within inches of Capitol police before diverting to Senator Merkley's hideaway office, where he and as many as 20 the rioters celebrated by breaking items and smoking. Someone stole a laptop, and the office door was smashed off its hinges. Mr. Marquez also found his way to the Capitol Crypt, where he filmed himself boasting that "we only broke a couple of windows." All told, Mr. Marquez spent close to an hour inside the Capitol. Afterwards, Mr. Marquez posted a highlight reel to his SnapChat and YouTube accounts which included images of a Glock firearm that he had when he drove to Washington D.C.

---

[5] *U.S. v. Kevin Cordon*, Case No. 1:21-cr-277-TNM.

[6] *U.S. v .Felipe Marquez*,

from Florida. Mr. Marquez was subsequently indicted for one felony count and four misdemeanors. Mr. Marquez pleaded guilty to one count of Disorderly Conduct and received a sentence of three months' home detention, 18 months of probation, and was ordered to pay $500.00 in restitution.

Despite staying inside the Capitol for more than 30 minutes, bragging about his exploits on social media, and actively spreading a false narrative with further promises to come back with guns, Verden Nalley received a sentence of probation with no jail time after pleading guilty to one count of Entering and Remaining in a Restricted Building in violation of 18 U.S.C. § 1752(a)(1).[7]

This court recently sentenced Dennis George Adams, Jr. to 45 days in jail after he plead guilty to a violation of 18 U.S.C. § 1752(a)(1).[8] Mr. Adam's behavior was, like all those above, also more egregious than Mr. Offman's. Whereas Mr. Offman has no social media accounts, Mr. Adam's was very active on Twitter in the days leading up to January 6, 2020, Mr. Adams declared his support for Mr. Trump as well as his desire to fight for him.[9] Mr. Adams, unlike Mr. Offman, entered the Capitol unlawfully twice, once at 2:57 PM and—after being forcefully removed by Capitol police—again at 3:08

---

[7] *U.S. v. Verden Nalley*, 1:21-cr-16-DLF.

[8] *U.S. v. Dennis George Adams, Jr.*, Case No. 1:23-cr-396-TSC.

[9] *Id.* Government's Sentencing Memorandum, Dckt 24, p. 2.

PM.[10] Mr. Adams moved with the crowd to the Crypt and remained inside the Capitol until 3:26 PM.[11] All told, Mr. Adams spent 20 minutes inside the Capito and a total of over three hours on restricted Capitol grounds.[12] Mr. Adams also appears to have shouted encouragement to his fellow rioters.[13] Mr. Offman, in contrast, entered the Capitol for six minutes during which time he took a selfie.

Given Mr. Offman's relatively de minimus behavior on January 6 as compared to countless others charged, this factor supports a sentence of probation with period of incarceration.

F. The Need to Provide Restitution to Any Victims of the Offense

Mr. Offman has agreed to pay the requested restitution amount of $500.

### III.   CONCLUSION

For the aforementioned reasons, a probationary sentence is appropriate.

DATED at Anchorage, Alaska this 3rd day of July, 2024.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER

---

[10] *Id.,* pp. 3-4.

[11] *Id.*, pp. 8-9.

[12] *Id.,* p. 9.

[13] *Id.,* p. 10.

District of Alaska

*/s/ Jane M. Imholte*

Jane M. Imholte
Assistant Federal Defender

Certificate of Service:

I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on July 3, 2024. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Jane Imholte*